**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JHC | ) | |
| By his father and next friend: | ) | |
| JOHN HARRISON CLARKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 20-cv-01761(CRC) |
| | ) | |
| DISTRICT OF COLUMBIA, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## THE DISTRICT OF COLUMBIA DEFENDANTS'
## MOTION TO DISMISS THE AMENDED COMPLAINT

The District of Columbia and the individual Defendants, Richard Trogisch, former Principal of School Without Walls at Francis Stevens, Assistant Principal Silean Eaves, and teacher Naelis Ervin, move the Court to dismiss the Amended Complaint in its entirety under Fed. R. Civ. P. 12(b)(6) because: (1) Plaintiff does not have Article III standing to bring this lawsuit; (2) he has failed to set forth a claim for municipal liability; (3) the individual defendants are entitled to qualified immunity; (4) his allegations fail to state a claim for civil conspiracy; and (5) the void for vagueness doctrine has no application to the declaratory judgment Plaintiff seeks because there is no statute or regulation at issue. Thus, the Court should dismiss the Amended Complaint in its entirety.

The grounds for this motion are more fully set forth in the accompanying memorandum of points and authorities. Defendants also attach a proposed order for the Court's consideration.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

1

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division


/s/ Michael Addo
MICHAEL ADDO [1008971]
Chief, Civil Litigation Division Section IV

/s/Martha J. Mullen
MARTHA J. MULLEN [419036]
Senior Assistant Attorney General
(202) 724-6612 direct
martha.mullen@dc.gov

/s/Akua D. Coppock
AKUA D. COPPOCK [1032665]
Assistant Attorney General
Office of the Attorney General
400 Sixth Street, NW
Washington, D.C. 20001
Direct: (202) 724-6522
Fax: (202) 730-1888
E-mail: akua.coppock@dc.gov

*Counsel for the District of Columbia Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JHC | ) | |
| By his father and next friend: | ) | |
| JOHN HARRISON CLARKE | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 20-cv-01761(CRC) |
| | ) | |
| DISTRICT OF COLUMBIA, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF THE DISTRICT OF COLUMBIA DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

**NATURE OF THE CASE**

John Harrison Clarke brings this 42 U.S.C. §1983 action on behalf of his minor son JHC, claiming that the District of Columbia (the District), Richard Trogisch, former Principal of School Without Walls at Francis Stevens and Assistant Principal Silean Eaves in conjunction with the District of Columbia Public Schools (DCPS) Comprehensive Alternative Resolution and Equity Team's (CARE) investigation, violated his son's rights under the First, Fifth, and Fourteenth Amendments[1] (Counts I-II). Count III alleges that Defendants Trogisch, Eaves and Ervin, conspired to cover-up Defendant Ervin's misconduct by falsely charging Plaintiff's son JHC with making racist comments. In Count IV, Plaintiff seeks a "declaratory judgment or

---

[1]    The District of Columbia is a political entity created by the federal government, and thus it is subject to the restrictions of the Fifth Amendment, not the Fourteenth Amendment. *Property v. Dist. Of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991) (citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)). Accordingly, the Court should dismiss with prejudice JHC's claims brought under the Fourteenth Amendment.

*Findings of Fact and Conclusions of Law*, determining which of DCPS's *Findings of Fact* are void for vagueness."

As discussed below, the Court should dismiss the Amended Complaint in its entirety under Fed. R. Civ. P. 12(b)(6), because (1) Plaintiff does not have Article III standing to bring this lawsuit; (2) he has failed to set forth a claim for municipal liability; (3) Defendants Trogisch and Eaves are entitled to qualified immunity; (4) he has failed to state a claim for civil conspiracy; and (5) the void for vagueness doctrine has no application to the declaratory judgment Plaintiff seeks because there is no statute or regulation at issue.

## STANDARD OF REVIEW

"[A] complaint must present a claim upon which relief can be granted by the court." *Williams v. Moore*, 899 F. Supp. 711, 712 (D.D.C. 1995) (quoting *Henthorn v. Department of the Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994)). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 500 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration marks omitted).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S at 555. The Supreme Court has set forth a two-pronged test to determine whether a complaint's factual allegations meet this standard. *Iqbal*, 556 U.S. at 678-79. First, the court should "identify[]

4

pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  Next, once a court has determined that the plaintiff has asserted "well-pleaded factual allegations," it "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  For a complaint to be facially plausible, its factual allegations must support "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (internal quotation marks and citations omitted).  The complaint's factual allegations "must produce an inference of liability strong enough to nudge the plaintiff's claims across the line from conceivable to plausible." *Id.* at 680 (internal quotation marks and citations omitted).

Applying these standards to this case, the Court should dismiss Plaintiff's Amended Complaint in its entirety.

## BACKGROUND

On February 4, 2020, Defendant Ervin instructed her theatre students to participate in a skit aimed at analyzing "how different groups of people are presented in the media." Am. Compl. ¶ 48.  While doing so Ervin gave student DE, a scarf to wear which he put on over his blue shirt. JHC joked to DE, "You look very woke." Am. Compl. ¶10.  Ervin thought JHC's use of the word "woke," was a racist slur. Am. Compl. ¶11. "She berated JHC, screaming . . . what makes you think it's okay to say what you said to DE?  Was it because he was sitting next to two black people?"  JHC replied "No." *Id.*  Ervin's angry reaction ended with her saying, "Racist rhetoric will not be tolerated!" *Id.*

On February 6, a substitute teacher in Ervin's class had the children play the game "telephone." Am. Compl. ¶12.  Although not described in the Amended Complaint, it is presumed that this game was played to show that what is said by one person, when repeated by another, and then another, etc., can sometimes become distorted.  Here, what was initially said

5

and by whom is not clear but whatever was said "morphed into DE is woke." *Id.* A group of three girls thought this was very funny and were jumping around and laughing in front of JHC and other students, which prompted ES, not JHC to joke that the girls "were jumping around like monkeys." Am. Compl. ¶ 20.

Later, that same day, while JHC was walking in the hallway, Ervin pulled him aside and asked him and the other eighth graders present what had happened earlier with the substitute teacher. After being told, Ervin said that if something like that happened again she would "give everyone zeros for the rest of the advisory," and, while looking at JHC and classmates EZ and ES, said that if she heard any similar statements or comments she would "call the police for hate speech," and record the incident in the students' "permanent records." Am. Compl. ¶13.

Ervin said to ES that she was extremely disappointed for letting his classmates "say racist things." She continued, "You can't let them do that. I'm doing this because you're a brown, black body," and "Next time I will slap the [sic] sense into you" She continued, "Don't even try to do anything because I know the DCPS handbook inside and out." When ES rolled his eyes, Ervin said, "Don't roll your eyes at me ever again or I will knock your teeth out." Am. Compl. ¶ 14.

EZ reported that Ervin "jumps straight to conclusion and portrays something that was not intended to be hate speech a form of hate speech." Am. Compl. ¶18. Ervin "will randomly have outbursts in the classroom, which [are] aggressive" towards students she thinks are racist. Am. Compl. ¶¶ 19-20. And that she makes students "very uncomfortable . . . . Many students in this class have felt harassed," and "many students feel threatened to come to class." *Id.* EZ complained that Ervin "threatened to break his fingers, saying, if you draw another picture like that [historical figures depicted with large ears], I'll make sure you'll never hold a pencil again."

*Id*.  Ervin also said she would "file a police report for hate crimes," and "drop[] all students' grades to an F for anger towards certain students."  *Id.*

On February 6, 2020, students EZ, JHC and ES went to the principal's office after school to complain about Ervin's conduct. Principal Trogisch told them to put their complaints in writing, which they submitted in the morning on February 7, 2020. Am. Compl. ¶17. "The facts recounted in JHC's submission corroborated EZ's and ES's reports of the threats, except that JHC included an instance of when [] Ervin [] threatened to stab another student, not JHC, with scissors while making a stabbing motion."  Am. Compl. ¶ 25.

I.      **The Investigation of JHC's Alleged Racial Slurs and Comments.**

On February 7, 2020, before questioning JHC, Trogisch called JHC's father telling him that the allegations against JHC and those against Ervin would be looked at in separate investigations. Am. Compl. ¶ 29.  There is no allegation that Plaintiff told Trogisch that he should not question his son unless he was present or at the very least that he should be present via telephone conferencing.  At the first meeting Trogisch "read from an email that had been sent to him the previous evening by the parent of one of J.H.C.'s classmates . . .  [That student reported] that J.H.C. says [the N word] all the time, says that slavery is the best thing that ever happened to this country, that it should be brought back, and says his black classmates look like monkeys." Am. Compl. ¶ 29. When asked if Trogisch had corroboration, he said, "Not yet." *Id*.

When questioned:  JHC said he used the word "woke" to describe DE, but denied that he meant it as a racial slur; (2) he denied saying that three African American girls looked or acted like monkeys, which student JS had already admitted saying; (3) he denied using the N-word; (4) championing slavery; (5) championing Trayvon Martin's death,; and (6) opposing Black History Month. Am. Compl. ¶ 36.  The interview lasted about one hour.  *Id.*

CARE's  investigation found that its information was "valid and reliable," but concluded that the purported "racial slurs were not consistent or pervasive enough to constitute a civil rights violation," and that "DCPS will implement a progressive discipline approach, if (JHC) does it again." Am. Compl. ¶ 46.  In addition, ten hours of counseling was recommended for JHC but that the counseling never took place and there was no progressive discipline imposed.  *Id.*  On May 6, 2020, Plaintiff filed an administrative appeal challenging the Responses to JHC Grievances, which remains pending although the deadline for DCPS to respond has long since passed.  *Id.* ¶¶ 86-88.

## ARGUMENT

I.    **The Court should dismiss all claims against the District.**

A.    **Plaintiff does not have Article III standing to bring this lawsuit.**

Counts I - II of the Amended Complaint seek to hold the District liable for violating JHC's First Amendment rights to free speech and Fifth Amendment due process, but he has not set forth an injury in fact, thus he does not have Article III standing to sue.

Article III of the U.S. Constitution sets forth a threshold requirement for any party that seeks to invoke the power of federal courts.  A plaintiff bringing a case in federal court "must allege an actual case or controversy" by claiming "some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974) (citing *Flast v. Cohen*, 392 U.S. 83, 94-101 (1968); *Jenkins v. McKeithen*, 395 U.S. 411, 421-425 (1969) (opinion of Marshall, J.); and quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973)).  For the plaintiff to satisfy this standard, he must have " 'a 'personal stake in the outcome' such as to 'assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' " *O'Shea*, 414 U.S. at 494

(quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).  "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'"  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)).  An injury in fact is one that is both "(a) concrete and particularized . . .  and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992).

Here, JHC has not articulated an actual injury that was caused by the District's conduct. Notwithstanding CARE's investigative protocols, which JHC faults, he *was* given an opportunity to be heard and there are no allegations that JHC was questioned without parental consent.

While JHC takes issue with CARE's  conclusion that its findings were "valid and reliable," it also found that the purported "racial slurs were not consistent or pervasive enough to constitute a civil rights violation," and that "DCPS will implement a progressive discipline approach, if (JHC) does it again."  Am. Compl. ¶46.  CARE recommended ten hours of counseling for JHC but that counseling never took place and there was no progressive discipline imposed.

While JHC was heard but not expressly exonerated by CARE's findings, he filed an administrative appeal challenging CARE's conclusions and the way Trogisch went about questioning him.  The appeal remains pending, Am. Compl. ¶¶ 86-87, which fortifies the District's position that JHC has not articulated a concrete injury in fact or a due process violation.

This case actually presents the flip side of *Carey v. Piphus*, 435 U.S. 247 (1978), in which the Supreme Court held that procedural due process was "absolute" and that its denial

may occasion the award of nominal damages, in the absence of actual injury. 435 U.S. at

263.  But unlike this case, the students in *Carey* were suspended from school without an

opportunity to be heard.  JHC was not suspended, expelled, or refused admission to the high

school of his choice because of any actions taken by the District. Thus, the Court should

dismiss Counts I-II of the Amended Complaint.

**B.**     **JHC has failed to set forth a claim for municipal liability**.

Plaintiff is suing the District under 42 U.S.C. § 1983 for declaratory relief, Am. Compl.

¶1, but to hold the District liable under § 1983, a plaintiff must show that the District

implemented or executed a policy or custom that caused the deprivation of plaintiff's

constitutional rights. *Monell v. Dept. of Social Svcs*, 436 U.S. 658, 690–91 (1978); *Rogala v.*

*District of Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998) (*per curiam*).  Plaintiffs thus have the

burden of proving "(1) that they were deprived of constitutional rights, and (2) that the

deprivation was caused by a policy or custom of the District."  *Brown v. District of Columbia*,

514 F.3d 1279, 1283 (D.C. Cir. 2008).  "A municipality cannot be held liable solely because it

employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a

respondeat superior theory." *Monell*, 436 U.S. at 691.  Rather, "a local government may not be

sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when

execution of a government's policy or custom, whether made by its lawmakers or by those whose

edicts or acts may fairly be said to represent official policy, inflicts the injury that the

government entity is responsible under § 1983."  *Id*. at 694.

Here, JHC has not pled a constitutional violation or that the violation was caused by a

District policy or custom.  Indeed, there is not one factual allegation even suggesting that the

District implemented a policy or practice that was the "driving force" behind the alleged

violation of JHC's First or Fifth Amendment rights.  *See Grissom v. Dist. of Columbia*, 853 F.Supp.2d 118, 123 (D.D.C.2012) (Aside conclusory allegations, the plaintiff's factual contentions do not allege how such a practice by the District was the moving force behind the alleged violation of his constitutional right to access the courts.).  "Mere legal conclusions, cast in the form of factual allegations, will not suffice to state a claim against the District; rather, '[p]laintiff must identify supporting facts, not simply restate the required elements. *Poindexter v. D.C. Dep't of Corr.*, 891 F. Supp. 2d 117, 123 (D.D.C. 2012).

JHC has failed to plead the elements of a viable § 1983 claim, much less provide factual allegations to show municipal liability.  Thus, the Court should dismiss Counts I-II against the District.

**C.      Defendants Trogisch and Eaves are entitled to qualified immunity.**

All but the "plainly incompetent or those who knowingly violate the law" are entitled to qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  "An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 770 (2014) (quotations and citation omitted).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Whether Defendants Trogisch and Eaves are entitled to qualified immunity is a question of law to be determined by the court before trial. *Young v. Scales,* 873 A. 2d 337, 341 (D.C. 2005) (citing *District of Columbia v. Jackson*, 810 A.2d 388, 393-394 (D.C. 2002)).  Qualified-immunity arguments are especially appropriate early in the proceedings of a case.  "Because qualified

immunity is an immunity from suit rather than a mere defense to liability[,] it is effectively lost if a case is erroneously permitted to go to trial." *Pearson*, 555 U.S. at 231. The Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*) (internal quotations marks omitted). Where the defendant seeks qualified immunity, the Court should make a ruling on that issue early in the proceedings to avoid the costs and expenses of trial where the defense is dispositive. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

JHC alleges he was questioned by Trogisch after waiting most of day in the principal's outer office. Am. Compl. ¶ 26. "Present were four administrators, Principal Trogisch, Assistant Principal Eaves, Assistant Principal Shanna Young, and Ms. Stephanie Beer. Ms. Eaves typed notes, and Ms. Young wrote onto a notepad. Defendants had read, and studied, the students' accounts, which had been submitted by 8:30 a.m." Am. Compl. ¶ 27.

Before questioning began, Trogisch called JHC's father and said that he would be conducting two separate investigations, one into the conduct of defendant Ervin, and one into J.H.C.'s conduct. Am. Compl. ¶ 27. There is no allegation that JHC's father told Trogisch not to question JHC unless he was present or participating by phone.

At the first meeting Trogisch "read from an email that had been sent to him the previous evening by the parent of one of J.H.C.'s classmates . . . [That student reported] that J.H.C. says [the N word] all the time, says that slavery is the best thing that ever happened to this country, that it should be brought back, and says his black classmates look like monkeys." Am. Compl. ¶ 29. When Plaintiff asked if Trogisch had corroboration, he said, "Not yet." *Id*. So Plaintiff was on notice of the scope of JHC's interview questions.

Neither Trogisch nor Eaves were on notice that questioning or typing notes about the serious allegations made against JHC, particularly when they had parental consent to do so, violated any clearly established right under the First and Fifth Amendments. The "scope of immunity afforded local school officials is extremely broad." *Pollnow v. Glennon*, 757 F.2d 496, 500 (2d Cir.1985). The doctrine provides a government official with greater protection than the defense that no constitutional violation occurred. *Gooden v. Howard County*, 917 F.2d 1355, 1360–61 (4th Cir.1990), rev'd on other grounds, 954 F.2d 960 (4th Cir.1982) (en banc). The defense is available even to a defendant who violates the constitutional rights of another, unless it is established that the official's conduct was "unreasonable under the applicable standard." *Davis v. Scherer*, 468 U.S. 183, 190 (1984). Officials do not lose this qualified immunity merely because their conduct violates some statutory or administrative rule. *Id*. at 194.

JHC was given an opportunity to be heard about the allegations against him that Defendants Trogisch and Eaves reasonably believed should be investigated.  They could not, on the facts alleged here, knowingly violate JHC's constitutional rights under the First and Fifth Amendments. There are no allegations of coercion in the first meeting for which they had parental consent and Plaintiff participated by telephone at his son's two subsequent hearings. Thus, Defendants Trogisch and Eaves are entitled to qualified immunity.

> **D.** **There are no allegations to support a claim for civil conspiracy.**

Plaintiff's allegations of civil conspiracy against all three named Defendants are equally infirm. To establish a prima facie case of civil conspiracy, Plaintiff must show (1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement pursuant to, and in furtherance of, the common scheme. *Griva v. Davison*, 637 A.2d 830, 848 (D.C.1994).

Plaintiff here alleges that "While [] currently unable to specify what role defendant Ervin played in this conspiracy, given the sequence of events, plaintiff avers, upon information and belief, that all individual defendants played a role in the false allegations of racial animus that suddenly emerged on the very day that the whistleblowers submitted testimony regarding defendant Ervin's misconduct." Am. Compl. ¶ 110.  Four of the six allegations of racial slurs and comments were submitted by the parent of a fellow student. Am. Compl. ¶ 29.

Thus, Plaintiff is asking the Court to infer that this parent and child also played a part in the conspiracy. The inferences Plaintiff seeks are based on surmise and conclusory statements that Defendants Trogisch, Eaves, and Ervin engaged in a conspiracy against JHC without any specific facts to support these assertions, and which fail to allege any facts but the most circumstantial that there must have been an agreement between or among the Defendants and unknown persons to commit an unlawful act against JHC.  Thus, Count III of the Amendment Complaint should be dismissed.

**II.**   **Plaintiff's request for injunctive relief should be dismissed as a matter law.**

Plaintiff seeks a Declaratory Judgment, or *Findings of Fact and Conclusions of Law*, determining which of DCPS's *Findings of Fact* are void for vagueness.   The allegations in the Amended Complaint do not lend themselves to relief sought against the District.  The void-for-vagueness doctrine generally holds that *criminal* statutes must be sufficiently specific that they provide "fair warning" of the conduct that is proscribed. *See United States v. Lanier,* 520 U.S. 259, 266 (1997) (emphasis added).  The Fifth Amendment's guarantee of due process "bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " *Id*. at 266, (quoting *Connally v. Gen. Constr. Co*., 269 U.S. 385, 391 (1926)).

Although the District's research was not extensive, it was unable to find case law holding that the void-for-vagueness doctrine can be applied to administrative findings of the nature described in the Amended Complaint. It appears that this doctrine applies only in the context of a statute or regulation that implicates constitutional rights.  Accordingly, the Court should dismiss Count IV of the Amended Complaint.

## CONCLUSION

For these reasons, the Court should dismiss the Amended Complaint in its entirety.


Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division


/s/ Michael Addo
MICHAEL ADDO [1008971]
Chief, Civil Litigation Division Section IV

*/s/Martha J. Mullen*
MARTHA J. MULLEN [419036]
Senior Assistant Attorney General
(202) 248-4385
martha.mullen@dc.gov

/s/Akua D. Coppock
AKUA D. COPPOCK [1032665]
Assistant Attorney General
Office of the Attorney General
400 Sixth Street, NW
Washington, D.C. 20001
Direct: (202) 724-6522
Fax: (202) 730-1888
Email: akua.coppock@dc.gov

*Counsel for the District of Columbia Defendants*

15

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JHC<br>By his father and next friend:<br>JOHN HARRISON CLARKE,<br><br>             Plaintiff,<br>        v.<br><br>DISTRICT OF COLUMBIA, et al.<br><br>             Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)       Civil Action No. 20-cv-01761(CRC)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

      Before the Court is the District of Columbia's and the individual Defendants'

Motion to Dismiss the Amended Complaint.  Upon consideration of the points and authorities

therein, any Opposition thereto, and the entire record, it is HEREBY ORDERED that the Motion

to Dismiss be GRANTED on this _____ day of _____2020.


                      /s/_____
                      CHRISTOPHER R. COOPER, JUDGE
                      UNITED STATES DISTRICT COURT